# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELYNDA PARKER, | Case No. ED CV 16-2363-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations of Social Security Administration, | |
| Defendant. | |

## I.
## INTRODUCTION

On November 15, 2016, plaintiff Melynda Parker filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the Administrative

Law Judge ("ALJ") properly considered the opinion of an examining physician in his residual functional capacity ("RFC") determination. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-10; Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-6.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly failed to consider all of the examining physician's opined mental limitations in his RFC determination. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was forty-six years old on her alleged disability onset date. AR at 72, 89, 108, 125. Plaintiff has a seventh grade education and past relevant work as a retail sales associate. *Id.* at 44-47, 67, 72, 89.

On December 7, 2012, plaintiff filed applications for a period of disability, DIB, and SSI, alleging an onset disability date of April 9, 2011. *Id.* at 72, 89, 221-28, 229-34. Plaintiff alleged disability due to chronic obstructive pulmonary disease ("COPD"), heart failure, diabetes, and depression. *Id.* at 72, 89. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 146-52, 153-59, 161-66, 167-72, 173.

On April 22, 2015, plaintiff, represented by an attorney, appeared and testified before the ALJ. *Id.* at 43-66. The ALJ also heard testimony from Elizabeth Ramos Brown, a vocational expert ("VE"). *Id.* at 66-69, 213-14. On July 13, 2015, the ALJ denied plaintiff's claim for benefits. *Id.* at 20-34.

Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff had not engaged in substantial gainful activity since April 9, 2011, the alleged disability onset date. *Id.* at 25.

At step two, the ALJ found plaintiff suffered from the following severe impairments: spina bifida, history of pulmonary embolism, cardiac dysrhythmias, COPD, obesity, and mood disorder. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 26.

The ALJ then assessed plaintiff's residual functional capacity,[1] and determined she had the RFC to perform light work, with the limitations that she: could only occasionally perform postural activities; could not work on ladders, ropes, or scaffolds; must avoid concentrated exposure to extremes of temperature and pulmonary irritants; and could not work at unprotected heights or around dangerous machinery. *Id.* at 28. The ALJ also limited plaintiff to non-complex and routine tasks, but no tasks requiring hypervigilance, no responsibility for the safety of others, no jobs requiring public interaction, and no jobs requiring significant teamwork. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work. *Id.* at 31.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform other jobs that exist in significant numbers in the national economy, including basket filler, garment

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

bagger, and folding machine operator. *Id*. at 33. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). *Id.* at 33-34.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3, 16-18. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

4

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.

# DISCUSSION

Plaintiff argues the ALJ improperly rejected the opinion of an examining physician, Dr. Kara Cross. P. Mem. at 3-10. Specifically, plaintiff contends the ALJ's RFC limitations failed to adequately incorporate Dr. Cross's mental impairment findings, and the failure to do so was not supported by substantial evidence in the administrative record. *Id.* at 6-8. Defendant responds the ALJ appropriately accommodated Dr. Cross's opinion in his RFC determination. D. Mem. at 3-6.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

5

1       Nevertheless, the ALJ is not bound by the opinion of the treating physician.
2 *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the
3 ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,
4 81 F.3d at 830.  If the treating physician's opinion is contradicted by other
5 opinions, the ALJ must provide specific and legitimate reasons supported by
6 substantial evidence for rejecting it.  *Id.*  Likewise, the ALJ must provide specific
7 and legitimate reasons supported by substantial evidence in rejecting the
8 contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a
9 non-examining physician, standing alone, cannot constitute substantial evidence.
10 *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v.
11 Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d
12 813, 818 n.7 (9th Cir. 1993).

      RFC is what one can "still do despite [his or her] limitations."  20 C.F.R.
§§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2).  The ALJ reaches an RFC determination
by reviewing and considering all of the relevant evidence, including non-severe
impairments.  *Id.*

**A.**    **Medical Opinions**

    **1.**    **Examining Physician Dr. Kara Cross**

      Dr. Kara Cross, Ph. D., a clinical psychologist, examined plaintiff on April 6, 2013 by administering a complete mental evaluation.  AR at 306-12.  Plaintiff presented to the examination with complaints of trouble concentrating, worried thoughts, moderate to severe depression due to her life situation and deteriorating health, and past suicidal thoughts.  *Id.* at 306-07.  Dr. Cross noted plaintiff had not received any psychiatric treatment, was never hospitalized in a psychiatric facility, but was taking Celexa, Wellbutrin, Nexium, metopolol, Coumadin, hydrochlorothiazide, and lovastatin medications.  *Id.* at 307.

      Plaintiff had fair relationships with her friends and family, could focus

attention, and had no difficulty making decisions. *Id.* at 308.  But plaintiff had some difficulty completing household tasks, was socially avoidant of others besides her family, and tried to avoid her family due to her feelings of depression and helplessness. *Id.*  During the mental status examination, Dr. Cross observed plaintiff had coherent and organized thought processes, good thought content and speech, and was oriented to time, place, person, and purpose. *Id.* at 309.  Yet plaintiff's mood and affect were very depressed, sad, tearful, and somewhat anxious.  Plaintiff also could not repeat four digits forward and backward, or recall three items immediately and after five minutes. *Id.*  Dr. Cross also observed plaintiff's difficulties with concentration and calculation, as she could not perform serial threes or alpha numeric reasoning. *Id.* at 310.  Based on the initial evaluation, tests, history, and medical records, Dr. Cross's diagnostic impression was that plaintiff suffered from major depression, and she assessed plaintiff a Global Assessment of Functioning ("GAF") score of 55.[2]

With respect to plaintiff's functional assessment, Dr. Cross opined plaintiff had moderate mental impairments due to her depression with regard to her ability to: relate and interact with co-workers and the public; maintain concentration and attention, persistence, and pace; and maintain regular attendance in the workplace and perform work activities on a consistent basis.  AR at 311.  Dr. Cross also opined plaintiff was able to "understand, remember, and carry out *simple* one or two-step job instructions," and "[a]lthough she is able, she would not be able to maintain emotional equilibrium for an 8-hour day." *Id.*  Plaintiff was also unable to follow detailed or complex instructions. *Id.*  Plaintiff had no functional

---

[2]  A GAF score of 55-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th Ed. 2000) ("DSM").

7

limitations with respect to her ability to: associate with day-to-day work activity, including attendance and safety; ability to accept instructions from supervisors; and ability to perform work activities without special or additional supervision. *Id.* Dr. Cross additionally opined plaintiff would not be a danger in the workplace. *Id.*

### 2. State Agency Physicians

State agency physicians Dr. Brady Dalton, Psy. D., on May 9, 2013, and Dr. Philip Rosenshield, Ph. D., on December 28, 2013, separately opined plaintiff had the mental capacity for simple work in settings with limited social or public contacts. *Id.* at 85-86, 102-03, 122, 139. Dr. Dalton and Dr. Rosenshield both opined plaintiff had moderate limitation with respect to: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination with or in proximity to others without being distracted; completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without unreasonable rest periods; interacting with the general public; and responding appropriately to changes in the work setting. *Id.* at 84-85, 101-02, 120-22,137-39.

## B. Medical Evidence

Plaintiff presented with depression and mild suicidal ideation at an assessment performed for Riverside County Mental Health Plan on July 31, 2013. *Id.* at 420-22. Plaintiff had a moderate dysfunction rating and a GAF score of 50.[3] *Id.* at 422. A treatment plan of two sessions per month to see a psychiatrist for medical evaluation was proposed. *Id.* Plaintiff was noted to be isolated and sometimes slept all day without caring if she died. *Id.* at 423.

---

[3] A GAF score of 41-50 is indicative of "serious symptoms," such as suicidal ideation or an inability to maintain employment. DSM at 34.

8

Plaintiff presented to Banning Mental Health on multiple occasions between November 6, 2013 and February 24, 2014. *See id.* at 431-33. Progress notes during these visits documented plaintiff's depression, anxiety, irritability, and angry mood, which occurred "daily almost all day." *Id.* The notes also report plaintiff experienced side effects of increased anger and agitation when her prescription medication dosage was doubled. *See id.* at 433. Plaintiff's mood swings led to suicidal ideation and poor relationships with others. *Id.*

**C.     The ALJ's Findings**

The ALJ was obligated to consider plaintiff's mental limitations, notwithstanding the ALJ's finding that they were non-severe impairments. *See* Social Security Ruling 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

The ALJ's RFC determination included the following mental limitations for plaintiff: limited to non-complex and routine tasks; no tasks requiring hypervigilance; no responsibility for the safety of others; no jobs requiring public interaction; and no jobs requiring significant teamwork. AR at 28. The ALJ gave the opinions of Dr. Cross and the state agency physicians "significant" weight in determining plaintiff was "capable of performing at least simple tasks with limited social contact." *Id.* at 31 (citing *id.* at 72-88, 89-105,108-24,125-41, 306-12). The ALJ found plaintiff's mental RFC was appropriate because the physicians' opinions were consistent with plaintiff's testimony and lack of additional objective mental health evidence. *Id.* The ALJ also suggested the medical record, as evidenced by a lack of mental health treatment, supports his RFC finding. *See id.* at 30-31.

Plaintiff argues the ALJ erred by rejecting specific portions of Dr. Cross's opinions, including that plaintiff was unable to maintain an emotional equilibrium

for an 8-hour day, plaintiff's moderate impairment in maintaining concentration, attention, persistence, and pace, and plaintiff's moderate impairment in her ability to maintain a regular attendance in the workplace and perform consistent work activities. P. Mem. at 5, 6.

### 1. **Emotional Equilibrium**

As to plaintiff's difficulty maintaining "emotional equilibrium," none of the ALJ's RFC limitations appear to address this aspect of Dr. Cross's opinion. The medical record suggests plaintiff's depression affected her daily mood, which was consistently noted to be angry or irritable. But the court agrees with defendant that Dr. Cross's opinion is confusingly stated and self-contradictory. *See* D. Mem. at 5-6. Dr. Cross states that "[a]lthough she is able, [plaintiff] would not be able to maintain emotional equilibrium for an 8-hour day." AR at 311. The structure of the statement leaves unclear what Dr. Cross intended to convey regarding plaintiff's actual ability to maintain emotional equilibrium throughout a workday. As such, the ALJ may have reasonably determined that Dr. Cross opined plaintiff could maintain her emotional equilibrium for a full workday. The ALJ did not err in his RFC determination by failing to accommodate this particular opinion, since he could have relied on Dr. Cross's own statement to find plaintiff was in fact able to maintain emotional equilibrium.

### 2. **Concentration, Attention, Persistence, and Pace**

With respect to Dr. Cross's opinion that plaintiff had moderate impairments in her ability to maintain concentration, attention, persistence, and pace, it appears the ALJ adequately accommodated this limitation by imposing a restriction that plaintiff not perform any tasks requiring "hypervigilance." AR at 28. In essence, this particular RFC limitation appears designed to restrict plaintiff from tasks requiring careful attention or focus. Plaintiff has not explained how the hypervigilance restriction does not accommodate Dr. Cross's concentration,

attention, persistence, and pace restrictions. Accordingly, the ALJ did not appear to reject this portion of Dr. Cross's opinion, as defendant suggests. *See* D. Mem. at 5.

### 3. **Ability to Maintain Regular Attendance**

The crux of the RFC issue here is the ALJ's failure to address, either in his development of the record or RFC discussion, Dr. Cross's opinion regarding limitations on plaintiff's ability to maintain regular attendance and consistently perform work activity. If the ALJ rejected Dr. Cross's findings of moderate mental limitations relating to plaintiff's ability to maintain a regular attendance in the workplace, he was required to say so and provide specific and legitimate reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830. The ALJ gave no such reasons here. On the contrary, the ALJ's RFC analysis indicated he accepted Dr. Cross's opinion, as he gave significant weight to it and stated it was consistent with plaintiff's testimony and the objective medical record. *See* AR at 31. The ALJ also gave significant weight to the opinions of the state non-examining physicians to support his RFC determination. *Id.* As noted above, both Dr. Dalton and Dr. Rosenshield opined plaintiff had moderate limitations relating to her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *Id.* at 84, 101, 121, 138. These non-examining opinions do not controvert Dr. Cross's opinion but instead serve as substantial evidence that is consistent with Dr. Cross's independent clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). But despite giving significant weight to Dr. Cross and the non-examining state physicians' opinions, the ALJ appears to have actually rejected them in part, given that he did not incorporate the opined moderate limitations relating to regular workplace attendance into his RFC determination.

The ALJ cited plaintiff's own testimony and the objective medical record as

11

justification for his RFC finding. AR at 31. The ALJ's reliance on the lack of mental health treatment in the record relates to plaintiff's credibility for her allegations, which is not at issue here. *See id.* at 30. This is an improper basis to reject the examining physician's opinions, even assuming it was a basis. *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) ("In sum, the ALJ appears to have relied on her doubts about [the claimant's] overall credibility to reject the entirety of [the examining psychologist's] report, including portions that [the psychologist] deemed to be reliable."). Nothing in the record indicates Dr. Cross did not believe plaintiff's description of her symptoms, or that Dr. Cross relied on plaintiff's descriptions more heavily than her own observations in opining plaintiff had moderate impairments in maintaining a regular work schedule. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2007). The remaining portions of the medical record relating to plaintiff's mental health also do not support a rejection of Dr. Cross's opinion. As documented above, the mental health medical record noted plaintiff's depression and resulting symptoms, but did not reveal any findings relating to plaintiff's ability to attend work.

Plaintiff's testimony at the hearing also did not address her ability, or lack thereof, to regularly attend a job. Plaintiff testified that her depression negatively affects her ability to interact with others and her concentration and memory. AR at 50-52. She was seeing social worker Peter Hilliard for her mental issues. *See id.* at 53, 57. Her primary care physician Dr. Edward Bacho had prescribed psychiatric medications, though it was described at the hearing as not significant treatment. *Id.* at 57, 64. Plaintiff stated she was not mentally able to handle the responsibility of working and cited her past unsuccessful return to work to provide examples where she had memory and focus issues. *Id.* at 53-54. Plaintiff's testimony arguably supports the ALJ's RFC findings with respect to her ability to perform simple tasks with limited social interaction. But the testimony does not

clearly address Dr. Cross's opinion that plaintiff would have moderate impairments relating to her ability to maintain regular workplace attendance. At most the testimony might be said to substantiate Dr. Cross's limitation, since plaintiff testified to her mental inability to return to work. As such, plaintiff's testimony does not provide a specific and legitimate reason supported by substantial evidence to justify the ALJ's implicit rejection of this aspect of Dr. Cross's mental limitation opinion.

Consequently, the ALJ erred in his RFC determination because he was required to consider all of the mental limitations opined by Dr. Cross, which in this case included moderate limitations with regard to plaintiff's ability to maintain a regular attendance in the workplace and consistently perform work activities. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (ALJ erred in failing to include a treating physician's opined limitation in his RFC assessment). The ALJ's failure to even acknowledge the opined limitation anywhere in his RFC discussion suggests he simply ignored this aspect of Dr. Cross's opinion without reason. The ALJ may ultimately conclude that the opined mental limitation does not need to be included in plaintiff's RFC, but his failure to even consider the mental limitation in his RFC determination was error. Nor was it plainly a harmless error, given the absence of clear testimony from the vocational expert as to the effect such moderate regular attendance limitations would have on plaintiff's ability to work. *See* AR at 67-69. As such, the ALJ erred in his RFC assessment.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this

discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the ALJ erred in his RFC determination, and it is unclear what plaintiff's RFC would be if the ALJ properly considered the entirety of Dr. Cross's opinion, or what effect a change in RFC would have on the disability determination. On remand, the ALJ shall consider all of the mental limitations opined by Dr. Cross and reassess plaintiff's RFC. The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

//

//

# VI.
# CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: October 9, 2018

SHERI PYM
United States Magistrate Judge